# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ERNESTO ESPARZA,<br><br>        Plaintiff,<br><br>        v.<br><br>LONG BEACH POLICE OFFICERS<br>J.A. BREARLEY, ADAM H. RIM,<br>and A.H. FOX,<br><br>        Defendants. | Case No. CV 09-9249 JVS (JCG)<br><br>MEMORANDUM AND ORDER DISMISSING FIRST AMENDED COMPLAINT, IN PART, WITH LEAVE TO FILE A SECOND AMENDED COMPLAINT WITHIN THIRTY DAYS |

## I.
## PROCEEDINGS

On December 22, 2009, plaintiff Raul Ernesto Esparza ("Plaintiff"), a California prisoner proceeding *pro se*, filed a civil rights complaint ("Complaint") pursuant to 42 U.S.C. § 1983.[1] On January 12, 2010, pursuant to the provisions of the Prison Litigation Reform Act, the Court screened the Complaint and found it deficient in several respects. (*See* Jan. 12, 2010 Ord. at 3-7.) Accordingly, the Court dismissed the Complaint, in part, but granted Plaintiff leave to amend. (*Id.* at 6-7.)

On February 1, 2010, Plaintiff filed a First Amended Complaint ("FAC") against three City of Long Beach police officers:

---

[1] Plaintiff is currently incarcerated at Avenal State Prison. (Complt. at 1.)

      1. Joshua A. Brearley ("Officer Brearley");

      2. Andrew M. Fox ("Officer Fox"); and

      3. Adam H. Rim ("Officer Rim").

All three officers are sued in their individual capacities. (FAC at 1, 3.) For ease of reference, all three officers may be referred to collectively as "Defendants."

      On March 31, 2010, Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion"). On April 19, 2010, Plaintiff filed an opposition and, on April 21, 2010, a supplemental opposition. On April 24, 2010, defendants filed their reply. On May 12, 2010, Plaintiff filed yet another opposition to the Motion. For the reasons discussed below, the FAC is dismissed, in part, with leave to amend.

## II.

## ALLEGATIONS OF THE COMPLAINT

      On October 30, 2008, Jennifer Gallagher called Plaintiff and asked that he meet her at 1st street and Cerritos avenue in Long Beach, California. (FAC at 8.) After Plaintiff and Ms. Gallagher rendezvoused, they began walking down 1st street, when Plaintiff noticed "a suspicious white male[,] dressed in all black[,] running towards" them. (*Id.*)

      Not knowing who the individual was, Plaintiff became frightened and ran away, eventually ending up in a nearby alley. (FAC at 8.) At that point, Plaintiff realized that he was also being pursued by a "Long Beach Police vehicle" being driven by Officer Fox. (*Id.*) Plaintiff believed that Officer Fox "was going to run [him] over ... with the police patrol car." (*Id.*)

      Plaintiff then decided to stop running, and surrendered by "submissively laying face down" on the ground, waiting "to be handcuffed." (FAC at 8-9.) Officer Fox then "exited his patrol car," "ran over to" Plaintiff, and "placed his ... right knee ... into the middle of" Plaintiff's lower back. (*Id.* at 9.)

      "Seconds later," Officer Brearley arrived and began kicking Plaintiff in the head, face, and upper torso. (*Id.*) Officer Fox then joined in the attack by "repeatedly

punching" Plaintiff with a "closed fist." (*Id.*) While the assault was in progress, Plaintiff yelled and requested that Officers Brearley and Fox stop the attack, but instead of stopping, the officers "attacked harder." (*Id.*) Plaintiff estimates that he was kicked 20-25 times, and punched 15-20 times – resulting in a laceration to his left eye and swelling in his right cheekbone. (*Id.* at 9-10.)

In addition to Officer Brearley's and Officer Fox's attacks, Plaintiff was also beaten by Officer Rim. (FAC at 10.) While Plaintiff was laying face down, Officer Rim used a "stream-light flashlight" to beat Plaintiff "with such force" that he broke Plaintiff's "lower left leg." (*Id.*)

After the attacks, Plaintiff was taken to Long Beach Memorial Hospital where he was treated for his injuries. (*Id.*) "Plaintiff was then taken into custody," and eventually plead *nolo contendere* to resisting/obstructing arrest (Cal. Penal Code § 69) and possession of a controlled substance (Cal. Health & Safety Code § 11377).[2] (RJN at 12.)[3]

Based on these allegations, Plaintiff asserts that the Defendants' use of force violated his Fourth Amendment rights and that Officers Fox and Rim "filed ... false police report[s]." (FAC at 5.) Plaintiff requests $300,000 in punitive damages, $200,000 in compensatory damages, $25,000 in "exclupatory damages," and $1 in nominal damages. (*Id.* at 6.)

---

[2] California Penal Code § 69 provides that "[e]very person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is" liable for the crime of obstructing/resisting executive officers.

[3] The Court grants defendants' Request for Judicial Notice of the Los Angeles County Superior Court criminal court docket for "*People of the State of California vs. Raul Howard Esparza*," case no. NA080092. Fed. R. Evid. 201(b).

# III.
# DISCUSSION

## A. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Dismissal for failure to state a claim "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988, *as amended* Feb. 27, 1990 and May 11, 1990).

In determining whether a complaint states a claim, its allegations must be accepted as true and construed in the light most favorable to plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989, *as amended*, Oct. 5, 1990). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads enough factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## B. Plaintiff's Excessive Force Claim is Not *Heck* Barred

Defendants contend that Plaintiff's excessive force claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court ruled that a plaintiff may not recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless the plaintiff can "prove that the conviction or sentence" has been reversed, expunged, or declared invalid. *Heck*, 512 U.S. at 486-487. The test is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [plaintiff's] conviction or sentence." *Id.* at 487.

Here, Defendants correctly point out that, first, "a violation of [Penal Code] section 69 ... require[s][,] as an element[,] that the officer at the time of the offense be

4

engaged in the *lawful* performance of his duties. *People v. Wilkins*, 14 Cal.App.4th 761, 776 (1993) (emphasis added). However, an "officer cannot be engaged in the lawful performance of [his] duties if ... he is subjecting an arrestee to excessive force." (Mot. at 5, (internal quotation marks omitted).) Ergo, Defendants argue, "an individual 'convicted and sentenced for the crime of resisting arrest ...' cannot, then in turn, assert a § 1983 excessive force claim against the arresting officers until such time as the underlying conviction has been invalidated." (*Id.* at 4.)

Although Defendants' logic is legally accurate, the Ninth Circuit requires this Court to engage in a more discerning fact-based analysis regarding the events surrounding Plaintiff's arrest. Notably, in *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir.), *cert. denied*, 545 U.S. 1128 (2005), the Ninth Circuit specifically examined the circumstances under which *Heck* bars excessive force claims where there is an underlying conviction for resisting or obstructing a police officer. The *Smith* court concluded that if "[e]xcessive force [was] used by a police officer at *the time of the arrest*," the arrest would be unlawful and the *Heck* bar would apply. *Id.* at 695-696 (emphasis in original). On the other hand, a "conviction based on conduct that occurred *before* the officers commence[d] the process of arresting the defendant" – or "*after* [the] defendant has been arrested" – "is not 'necessarily' rendered invalid by the officers' subsequent use of excessive force in making the arrest." *Id.* at 696 (emphasis in original). In other words, timing matters; if the excessive force predated or antedated the arrest, the underlying conviction and its presumption of lawfulness do not foreclose an excessive force claim under *Heck*.

Here, accepting Plaintiff's allegations as true and construing them in the light most favorable to Plaintiff, Defendants' use of excessive force did not commence until *after* Plaintiff was "submissively laying face down" on the ground, waiting "to be handcuffed," with Officer's Fox's knee planted in the middle of his back. (FAC at 8-9.) At that point, Plaintiff had surrendered to the officers, was physically restrained, and was in the custody of law enforcement. *See* Cal. Penal Code § 834 ("An arrest is

taking a person into custody."); Cal. Penal Code § 835 ("An arrest is made by an actual restraint of the person, or by submission to the custody of an officer.")

Thus, at this stage of the proceedings and based on the allegations in the FAC, the Court finds that Defendants' alleged use of excessive force occurred *after* the conduct that formed the basis for Plaintiff's resisting arrest conviction. As such, *Heck* does not apply to bar Plaintiff's excessive force claim. *See Sanford v. Motts*, 258 F.3d 1117, 1120 (9th Cir. 2001) (if defendant punched plaintiff after she was "handcuffed" and "arrested," "success in [plaintiff's] section 1983 claim will not invalidate her conviction" for resisting arrest.); *Jones v. Cummings*, 131 Fed.Appx. 551, 551-552 (9th Cir. 2005) (excessive force occurring after plaintiff "was constrained by handcuffs" does not destroy the lawfulness of the arrest.); *Lightner v. County of Contra Costa*, 2010 WL 1267121, at * 1-3 (N.D.Cal. Mar. 29, 2010) (where two deputies had already physically restrained a defendant – who was lying "face down on the floor [with] his hands behind his back" – another deputy's release of a police dog and command to attack plaintiff would not "necessarily [be a] part of [the] chain of events tied to [p]laintiff's resisting arrest," and *Heck* would not act as a bar to plaintiff's excessive force claim at the motion to dismiss stage.)

The Ninth Circuit's *Smith* decision also provides another basis upon which to reject Defendants' *Heck* claim. "[W]here the circumstances surrounding [a] plaintiff's conviction do not permit the court to conclude which of many acts formed the basis of the conviction, *as in the case of a guilty or no contest plea*, the court [cannot] conclude that a successful § 1983 claim would invalidate [an] earlier conviction." *Pierce v. City of Salem*, 2008 WL 4415407, at *6 (D. Oregon Sep. 19, 2008) (emphasis added); *Smith*, 394 F.3d at 698 ("Because we are unable to determine the factual basis for [Smith's] plea, his lawsuit does *not* necessarily imply the invalidity of his conviction and is therefore not barred by *Heck*.") (internal quotation marks and citation omitted).

Like *Smith*, the factual basis for Plaintiff's *nolo contendere* plea is not in the

record currently before the Court.[4] And the only fact alleged in the FAC that could form the basis for a resisting arrest charge is Plaintiff's act of fleeing when he was first pursued by law enforcement. (FAC at 8.) At that point in time, however, Defendants' alleged use of excessive force had not yet begun, and as such, *Heck* would not apply. *See Smith*, 394 F.3d at 699 ("[A]s long as the officers were acting lawfully *at the time* the violation of [Penal Code § 69] took place, their alleged acts of excessive force, whether they occurred *before* or *after* [plaintiff] committed the acts to which he pled, would not invalidate his conviction.") (emphasis in original).

Consequently, the record is not sufficiently developed at this juncture for the Court to reasonably conclude that *Heck* bars Plaintiff's excessive force claims – *i.e.*, "the record does not show whether the conduct for which Plaintiff was charged" and convicted "coincided with" Defendants' use of excessive force. *Lightner*, 2010 WL 1267121, at *2.

Finally, the Court is cognizant that the police reports attached to the FAC paint a vastly different picture regarding the events leading up to Plaintiff's arrest. (*See* FAC, Exhs. A and B.) However, at this stage of the proceedings, the Court declines to accept the police reports' recitation of events as being true, over the allegations in the FAC – particularly given that Plaintiff's express purpose in attaching the reports was to show that the reports were "deceptive" and "fabricated." (FAC at 10.)

   B. <u>Plaintiff's Claim that the Police Reports were Falsified is Barred by *Heck*</u>

In his second claim, Plaintiff contends that Officer Fox and Officer Rim falsified their police reports regarding the October 30, 2008 incident. (FAC at 10.) Both of the police reports differ greatly from Plaintiff's account of his arrest, and describe several acts by Plaintiff which would plainly constitute resisting arrest under Penal Code section 69. (*See* FAC, Exhs. A and B.) Thus, it is well established that Plaintiff's

---

[4] "[F]or purposes of the *Heck* analysis, a plea of *nolo contendere* in a California criminal action has the same effect as a guilty plea or jury verdict of guilty." *Nuno v. County of San Bernardino*, 58 F.Supp.2d 1127, 1135 (C.D.Cal. 1999).

7

contention that the police reports were "fabricated" would necessarily call into question the validity of Plaintiff's plea and conviction for resisting arrest. A host of courts concur. *See Heck*, 512 U.S. at 486-487; *see also Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006) ("[M]alicious prosecution ... and a conspiracy among Los Angeles officials to bring false charges against [plaintiff]" "would necessarily imply the invalidity of [plaintiff's] two convictions[.]"); *Moore v. U.S.A.*, 1998 WL 700551, at *1 (9th Cir. Sep. 23, 1998) (plaintiff's "claims that defendants perjured themselves, ... secured perjured testimony ..., [and] fabricated testimony ... are precluded under [*Heck*] because they implicate the validity of his convictions."); *Oliver v. San Francisco Police Dep't*, 1995 WL 309539, at *1 (9th Cir. May 19, 1995) (plaintiff's allegations that "defendants submitted a false police report and committed perjury at his criminal trial" would "necessarily imply the invalidity of his conviction"); *Dobshinsky v. Piccinini*, 2006 WL 3784624, at *2 (N.D.Cal. Dec. 21, 2006) ("Here, any claim that the police officer falsified the report ... cannot be pursued in this action because, if successful, would call into question the validity of [plaintiff's] conviction.) Accordingly, Plaintiff's false report claim is *Heck* barred.

## V.

## **LEAVE TO AMEND**

The Court must construe "pro se pleadings ... liberally ..., particularly where civil rights claims are involved." *Balistreri*, 901 F.2d at 699. But "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Accordingly, *pro se* litigants must be given leave to amend unless it is absolutely clear that the deficiencies in a complaint cannot be cured. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (*per curiam*).

Although the Court does not believe that Plaintiff's false police report claim can be amended to state a claim, the Court is not prepared to say that amendment would be entirely futile. Thus, leave to amend is granted in an abundance of caution. However,

if Plaintiff desires to proceed only on his excessive force claim, he should so inform the Court. In that event, the Court will dismiss Plaintiff's false report claim. Accordingly, by **October 1, 2010**, Plaintiff may submit a Second Amended Complaint to cure the deficiencies discussed above, or inform the Court that he wishes to proceed on his excessive force claim only.

If Plaintiff chooses to file a Second Amended Complaint, it must comply with the Federal Rules of Civil Procedure. Conclusory allegations that a defendant has violated a constitutional right are not acceptable and will be dismissed. Plaintiff must clearly designate on the face of the document that it is the "Second Amended Complaint," and it must be retyped or rewritten in its entirety on the court-approved form. The Second Amended Complaint may not incorporate any part of the FAC by reference, nor add new claims or defendants that were not involved in the conduct, transactions, or occurrences set forth in the FAC. Fed. R. Civ. P. 15(c). Any amended complaint supercedes preceding complaints. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.), *cert. denied*, 506 U.S. 915 (1992). After amendment, the Court will treat the FAC as nonexistent. *Id.* Any claim that was raised in the FAC is waived if it is not raised again in the Second Amended Complaint. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

If Plaintiff fails to file a Second Amended Complaint by **October 1, 2010** and/or such Second Amended Complaint fails to comply with the requirements set forth in this Memorandum and Order, the Court may recommend that this action, or portions thereof, be dismissed with prejudice.

IT IS SO ORDERED.

DATED: September 1, 2010

_____
Hon. Jay C. Gandhi
United States Magistrate Judge